UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| VICTOR M. UTECH, CODGER'S CASTAWAY DEVELOPMENT, LLC, CODGERS CASTAWAY RV PARK LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> SPRING CREEK COW CREEK SANITARY DISTRICT, <br><br> Defendant. | 3:25-CV-03027-RAL <br><br><br> OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PRELIMINARY INJUNCTION |

On October 30, 2025, Plaintiffs Victor M. Utech and Codger's Castaway Development, LLC (CC Development) filed a Complaint, Doc. 1, Motion for Temporary Restraining Order and Preliminary Injunction, Doc. 3, Brief in support of that Motion, Doc. 4, and an Affidavit of Victor M. Utech with attachments thereto, Docs. 5 and 5-1 to 5-12. This Court denied Plaintiffs' request for a temporary restraining order and sought to set a preliminary injunction hearing under Rule 65(a). Doc. 8. At various times, this Court inquired of counsel when they were ready to hold a preliminary injunction hearing.

Plaintiffs filed a Motion to Amend Complaint and Join Plaintiff, Doc. 16, seeking to add Codger's Castaway RV Park, LLC (CC RV Park) as an additional party to this case. Defendant Spring Creek Cow Creek Sanitary District (the District) opposed both Plaintiffs' Motion to Amend Complaint and Join Plaintiff and Motion for Preliminary Injunction. Docs. 17, 20.

1

This Court set and held a preliminary injunction hearing on June 12, 2026. Doc. 24. This Court granted Plaintiffs leave to amend but made clear that doing so would not be a vehicle for Plaintiffs to seek broader preliminary injunctive relief at the hearing. See id. This Court heard testimony from two witnesses—District Board of Trustees' member Neal Konda (Konda) and Plaintiff Victor Utech (Utech)—and received exhibits[1] in evidence. Docs. 26, 27. For the reasons explained below, this Court grants only in limited part Plaintiffs' Motion for Preliminary Injunction.

## I.    Facts

The District is "a political subdivision of the State of South Dakota." Doc. 1 ¶¶ 4–5; SDCL § 34A-5-14. Utech is a developer, golf course owner-operator, RV park owner, and businessman with residences in Sully County, including at least one residence within the District's boundaries. See id. ¶ 7. CC Development is a South Dakota limited liability company that owns real estate within the District, including the tract of land where Utech built his new residence. Id. ¶ 8. Utech is a part-owner and officer of CC Development and CC RV Park. Id. ¶ 9. CC Development has developed real estate within the District. Id. CC RV Park owns adjacent land to that owned by CC Development, which is connected to the District's water system but not to its sewer system. See Hr'g Ex. B.

A predecessor to the District was formed over thirty years ago and went through various phases as an organization. Doc. 1 ¶ 13. In July 2020, with Hughes County interested in divesting itself of the water and sewer systems in the area, Utech, Konda, and others successfully petitioned and encouraged voters to establish the District, which has since operated as "its own, standalone

---

[1] This Court will cite to exhibits entered into evidence at the preliminary injunction hearing as "Hr'g Ex."

entity." See id. ¶¶ 14–15. Utech testified that he paid $35,000 of his own money to assist in establishing the District in 2020. Both Utech and Konda were initially on the District's Board of Trustees (Board).

The District's territory covers approximately three square miles of land near part of the eastern shore of Lake Oahe and serves roughly 300 residential and commercial users and several temporary campground users. Id. ¶ 6. The territory includes undeveloped agricultural lands, a few residential subdivisions, and recreational properties. Id. ¶ 19. The District supplies its customers with both drinking water and sanitary sewer services. Id. ¶ 16. The District purchases its water from Mid-Dakota Rural Water and distributes it to customers via a system of drinking water mainlines. Id. ¶ 17. The District removes sanitary waste from its users via a system of sewer mainlines into a lagoon system. Id. ¶ 18.

On October 15, 2021, Utech and his son paid two million dollars to acquire three tracts of land, at least two of which are within the District. Hr'g Ex. D. Utech and his son assigned Cow Creek Recreation Tract 4 (47.57 acres purchased for $717,280) and Cow Creek Recreation Tract 2 (122.52 acres purchased for $981,120) to CC Development. Id. at 4, 8. They assigned the remaining Cow Creek Recreation Tract 2 (37.70 acres purchased for $301,600), known as the old Oahe Speedway Campground,[2] to CC RV Park. Id. at 4, 7. The RV Park presently has 68 sites with full hook ups and 32 sites with electrical supply only. There is no dump station, and the septic system is trench based.

---

[2] At the hearing, Utech testified that he acquired the RV Park and former Oahe Speedway racetrack on October 18, 2020. The actual date of acquisition is largely immaterial.

In 2021, Utech was forced off the District's board because of a claimed conflict of interest.[3] The Plaintiffs collectively own about 65% of the land in the District and have presented to the Board and gained approval of some lots for CC Development to develop. The District believes Plaintiffs to have in mind development of 250 RV lots and more than 100 additional residential lots. The record contains a JM Smith Engineering LLC site plan for subdivision of much of the District's area into Residential lots by CC Development, Hr'g Ex. 2, but Plaintiffs disclaim any intention presently to pursue further development besides enlarging the RV Park, which they want to service by well and septic system apart from the District.

After the District formed in 2020 and anticipating Plaintiffs' development, the District upgraded from a 58,000 gallon tank to a 200,000 gallon tank and made other capital improvements to the water and sewer systems. In 2022, the District's Board adopted two ordinances, one governing water use within the District, Hr'g Ex. 7, and the other governing sewage, Hr'g Ex. 8. Article IV of the water use ordinance requires homes to connect to the District's water mains if the main is "within 400 feet of the property line." Hr'g Ex. 7 at 3. Article XV makes it a misdemeanor to fail to do so after a written notice and reasonable time to correct the violation is given. Id. at 10. Similar provisions in the sewer use ordinance require connecting to the District's public sewer if "within 400 feet of the property line" and expose individuals to misdemeanor charges for violating the ordinance. Hr'g Ex. 8 at 6, 17. In 2024, the District's Board enacted two funding resolutions, Hr'g Ex. 14, in connection with bonds to further upgrade the water and sewer

---

[3] SDCL § 34A-5-28 prohibits any trustee of a sanitary district from being "directly or indirectly interested in any contract, work, or business of the district," though there is an exception for contracts under a $3,000 per year threshold where the consideration is reasonable and just under SDCL § 34A-5-28.1.

4

facilities. The District expected new homes to connect to the District's water and sewer systems, thereby generating revenue to service the debt and continue to improve the system.

The Board had approved 75 lots plus 18 additional lots for CC Development, limiting its approval so as not to overwhelm the District's system's current capacities. At some point, CC Development, in connection with the development of residential lots, connected to the District's mains and extended water and sewer lines along a street called Castaway Loop within the District. Hr'g Ex. 2. The District approved connections to its system but has not formally taken ownership of the extended water and sewer lines installed by or at the direction of CC Development due to a dispute pending over the one-year warranty inspection. While not central to this case, that dispute appears to be one of several disputes between the Plaintiffs and the District.

Utech and his son met with Konda in late October of 2024 to discuss, among other things, Utech's desire to develop CC RV Park using a private well and septic system. Hr'g Ex. 15. The District's Board met on November 20, 2024, and adopted Resolution 2024-5, providing "[a]ll premises where water and/or sanitary sewer service is intended to be installed within the jurisdictional boundaries of the District shall be directly connected to the public water and wastewater collection and treatment system of the District." Hr'g Ex. 10 § 1; Hr'g Ex. 17. The Resolution required the owner to develop plans and specifications to extend water and sewer lines to the premises, Hr'g Ex. 10 § 2, and made a violation of the Resolution a misdemeanor, id. § 6. Konda testified that the Board's intention with Resolution 2024-5 was to disallow competing systems and give force to the funding resolutions and existing ordinances. The minutes of the meeting suggest that the Board had some awareness that Resolution 2024-5 might stretch past the existing ordinances, which had required connection to a District water main or sewer line if one was within 400 feet of the property line. Hr'g Ex. 17; see Hr'g Exs. 7, 8, 16. Plaintiffs view

Resolution 2024-5 as targeting them and indeed characterize it as an illegal bill of attainder. Doc. 1 at 13–15.

The preliminary injunction motion and this case's origin stem from Utech's decision to use a well and septic system at a newly-built personal home just within the District's northern boundary on CC Development's 47.57 acre Tract 4, a portion of which extends outside of the District. Utech chose as early as May 2025 what he described as an ideal location about 150 feet south of the northern boundary of the District, connected by a long private drive of nearly a half mile to Spring Creek Road, where the nearest 6-inch water main owned by the District exists. Utech could have located his home within Tract 4 nearer to the existing 6-inch main or indeed outside of the District farther north, but he wanted privacy and already has two homes nearby where there is less privacy. Utech deemed there to be no sewer or water main within 400 feet of his planned home, relying on Administrative Rule of South Dakota (ARSD) 74:53:01:07 which contemplates connection to a sewer only if "the sewer collection system of the public entity exists within 400 feet of the home." Hr'g Ex. 9.

Utech sought and received approval on January 7, 2025, from the South Dakota Department of Agriculture and Natural Resources (DANR) for a septic tank installation for his new home. Hr'g Ex. 3. That approval contained a condition for Utech to "contact the [District] to determine if the installation is allowable under their ordinances." Id. Utech submitted an application for his private septic tank with the District on August 6, 2025. Doc. 1 ¶ 29. On August 13, 2025, the District rejected Utech's application and stated the "personal residence lie[s] solely within the District and therefore would be prohibited." Id. ¶ 30; Hr'g Ex. 5; see also Hr'g Ex. 4. The denial letter cited to Resolution 2024-5 and to ARSD 74:53:01:07, though it improperly read ARSD 74:53:01:07 in the disjunctive. Hr'g Ex. 5; see Hr'g Ex. 9. The next day, on August 14,

2025, Utech placed a manufactured home on the site and has lived there during times when he and his wife are not wintering in the Florida Keys.

Utech and the District debate how far Utech's new residence is from a usable water main owned by the District. Utech considers only the District's 6-inch water main to be sufficient to supply his home and not the District's 2 ½-inch water line that is much closer to his residence and is within about 250 feet of the property line. Though Utech has a 1 ¼-inch water line from the private well to his home, he contends that the District's 2 ½-inch line is inadequate because when it ruptured, barely any water was lost demonstrating insufficient water pressure to supply his home. Utech calculates that 4,888 feet and 4,319 feet[4] of trenching and pipe would need to be installed for his residence to be connected to the District's nearest suitable sewer and water mainlines, respectively. Doc. 1 ¶¶ 22–23. Because of the topography of the land, a lift station would be required as well, which Utech's Complaint claims would put connecting his home to the District's sewer and water lines at a total cost "approaching or exceeding one million dollars." Id. ¶ 24. Utech's exhibits at the hearing put his actual cost at $365,137.92 for the sewer line and between $159,232.00 and $168,960.00 for the water line. Hr'g Exs. 19, 20. A lift station could cost $60,000 to $80,000 according to Utech. Konda[5] testified that he thought the cost would be much lower and that Utech readily could obtain adequate water supply by connecting to a much closer 2 ½-inch water line.

---

[4] If the District were to acquire the CC Development-financed extension of the sewer and water supply to nearby lots, this calculation changes dramatically.

[5] Konda is a professional engineer with expertise in wastewater handling who works for the DANR. He has served on the District's Board for several years. He did not testify as an expert on cost of installing lines to connect to water and sewer mains, but he presumably has some experience and knowledge on that subject.

Utech or one of his companies installed his own septic system for about $6,500 and ran a 1 ¼-inch line to an existing private well on the property for about $1,400. On October 1, 2025, the District sent Utech a demand letter "requiring that he 'un-install and cease operations of his personal on-site wastewater and water distribution systems, and immediately connect his personal residence to the District's water and sewer system.'" Doc. 1 ¶ 31. The letter stated that "[i]f [] Utech fails to un-install and cease operation of his personal wastewater and water distribution systems, and refuses to connect to the District's water and sewer systems within thirty (30) days of the date of this letter, the District will consider formal legal action to enforce the same." Id. ¶ 32.

Plaintiffs then sued, filing a Complaint alleging five counts: 1) a federal takings claim, 2) a state takings claim, 3) a declaration of rights under 28 U.S.C. § 2201, 4) wrongful bill of attainder, and 5) federal due process claims. Doc. 1. The addition of CC RV Park through the Amended Complaint does not add any counts. See Doc. 16-1. Plaintiffs allege in counts 1 and 2 that the District's demand to connect Utech's new home to the District's water and sewer constitutes a taking under the Fifth Amendment of the United States Constitution and Article VI, Section 13 of the South Dakota Constitution. Doc. 1 at 8–13. Plaintiffs in count 3 seek a declaration under 28 U.S.C. § 2201 that the District's conduct violates both federal and state constitutional provisions, state statutes, state regulations, and the District's own ordinances. Id. at 13. In count 4, Plaintiffs seek a declaration that Resolution 2024-5 is an unconstitutional Bill of Attainder. Id. at 13–15. Count 5 alleges that the District's conduct violated Plaintiffs' procedural and substantive due process rights because there was not an affirmative vote to issue the demand letter and, alternatively, that its conduct was irrational and outrageous. Id. at 15–16.

In the 7 ½ months between the filing of the Complaint and the ultimate hearing on the preliminary injunction motion, the District took no action to pursue misdemeanor charges against Plaintiffs or connect the new Utech home to the District's water and sewer system at Plaintiffs' cost. Two days before the preliminary injunction hearing, the District's Board met and adopted two resolutions material to this dispute. Resolution 2026-1 modifies Resolution 2024-5 by allowing the Board to "grant a private use variance to private property owners within the District," conditional until the District's "sewer main and water main are located within 400 feet of the private property boundary." Hr'g Ex. 11 at 1. The Resolution also allows the Board to grant a private-use variance "to any private system existing or installed prior to the date of this Resolution upon application submitted by a private property owner within the District and after a satisfactory inspection by the Board or its designee." Id. Resolution 2026-2 authorizes extension of the sewer force main up to 1,950 lineal feet to bring the sewer force main far closer to where Utech located his new home. Hr'g Ex. 12.

The record also contains information concerning Water Permit Application 8987-3, which Utech has sought from the DANR and the District intervened to oppose. See Hr'g Exs. 18, 101. Permit Application 8987-3 sought to advance Plaintiffs' plan for a private well and septic system for a 213-site RV Park. Hr'g Ex. 101. The DANR board voted at the end of the contested hearing between Utech and the District on May 6, 2026, to deny Permit Application 8987-3. Hr'g Ex. 18 at 106.

At the preliminary injunction motion hearing, the District stipulated to entry of a preliminary injunction to preclude it from initiating or supporting criminal proceedings against Plaintiffs concerning the well and septic system at Utech's new private residence. Plaintiffs want more, initially asking for this Court to grant injunctive relief that none of the Plaintiffs have any

obligation to connect to the District's water and sewer systems and ultimately requesting a declaration that Resolution 2024-5 is unconstitutional.

## II.   Motion to Amend Complaint and Join Additional Party

As mentioned previously, Plaintiffs filed a Motion to Amend Complaint and Join Additional Party, Doc. 16, seeking to add CC RV Park as a plaintiff though not adding any additional claims. See Doc. 16-1. The District opposed this request. Doc. 17. This Court's Rule 16 Scheduling Order set the deadline to amend the complaint and join additional parties for February 15, 2026. Doc. 15. Plaintiffs filed the motion on February 11, 2026. Doc. 16. Leave to amend is to be freely granted when justice requires under Federal Rule of Civil Procedure 15(a). For the reasons expressed during the hearing, Plaintiffs' Motion for Leave to Amend is granted. New Plaintiff CC RV Park has no direct stake in the issue framed by the preliminary injunction motion, which focuses on the dispute over Utech's new home's private well and septic system.

## III.   Motion for Preliminary Injunction

### A. Legal Standard

Plaintiffs seek a preliminary injunction under Rule 65(a) of the Federal Rules of Civil Procedure. Docs. 3, 23. "A district court considering injunctive relief evaluates [1] the movant's likelihood of success on the merits, [2] the threat of irreparable harm to the movant, [3] the balance of the equities between the parties, and [4] whether an injunction is in the public interest." Powell v. Ryan, 855 F.3d 899, 902 (8th Cir. 2017) (citing Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). These four considerations are commonly known within the Eighth Circuit as the "Dataphase factors." "No single factor is dispositive, as the district court must balance all factors to determine whether the injunction should issue. However, in deciding whether to grant a preliminary injunction, likelihood of success on the merits is most significant."

Turtle Island Foods, SPC v. Thompson, 992 F.3d 694, 699 (8th Cir. 2021) (cleaned up and citations omitted). A preliminary injunction is an "extraordinary remedy," and the burden of establishing that such an injunction should enter rests with the moving party, here the Plaintiffs. Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003).

## B. Likelihood of Success on the Merits

Plaintiffs assert that the District is improperly forcing them to connect Utech's residence to the District's water and sewer mainlines. According to Plaintiffs, public water and sewer are not legally "available"—under both ARSD 74:53:01:07 and the District's Ordinances—to his home, exempting him from making a connection to the District's facilities. See Doc. 23 at 6–8. Plaintiffs bring five claims,[6] but they "need only establish a likelihood of succeeding on the merits of any one of [their] claims." Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs, 826 F.3d 1030, 1040 (8th Cir. 2016) (citation omitted).

A federal court lacks jurisdiction over claims that have not yet accrued or are not yet ripe. As one of the justiciability doctrines, ripeness concerns whether a claim is being brought at the proper time, Vogel v. Foth & Van Dyke Assocs., 266 F.3d 838, 840 (8th Cir. 2001), and prevents a court from issuing an advisory opinion on "a hypothetical state of facts," KCCP Tr. v. City of N. Kan. City, 432 F.3d 897, 899 (8th Cir. 2005). Thus, claims are not ripe when they rest on "contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998) (cleaned up and citations omitted); see also 281 Care

---

[6] Plaintiffs, in their Pre-Hearing Brief, abandon their bill of attainder claim as a basis for injunctive relief. Doc. 23 at 20 n.23. Although the Plaintiffs' Complaint does not distinguish between substantive and procedural due process claims, Plaintiffs do not present any argument that a substantive due process claim forms the basis for injunctive relief. See Doc. 23. This leaves Plaintiffs' two takings claims and procedural due process claim as possible claims supporting preliminary injunctive relief.

Comm. v. Arneson, 638 F.3d 621, 631 (8th Cir. 2011); Pub. Water Supply Dist. No. 8 of Clay Cnty. v. City of Kearney, 401 F.3d 930, 932 (8th Cir. 2005). "Ripeness requires a court to evaluate 'both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." KCCP Tr., 432 F.3d at 899 (quoting Texas, 523 U.S. at 300–01). The Supreme Court has found that "a possible financial loss is not by itself a sufficient interest to sustain a judicial challenge to governmental action." Abbott Lab'ys v. Gardner, 387 U.S. 136, 153 (1967) (abrogated on other grounds). Although pre-enforcement judicial action may be appropriate to block some governmental action, see id. at 153–54; but see Texas, 523 U.S. at 301– 02, a claim typically is not ripe until actual financial loss from government action occurs, see Abbott Lab'ys, 387 U.S. at 153–54.

A related question to ripeness is when a claim accrues. See Wallace v. Kato, 549 U.S. 384, 388 (2007) (stating that one of the aspects of claim accrual is when an injury occurred). A claim accrues "when the plaintiff has a complete and present cause of action." Rassier v. Sanner, 996 F.3d 832, 836 (8th Cir. 2021) (cleaned up and citations omitted). The question of when a federal cause of action accrues is based on federal law. See McDonough v. Smith, 588 U.S. 109, 115 (2019) ("Although courts look to state law for the length of the limitations period, the time at which § 1983 claim accrues is a question of federal law[.]" (cleaned up and citation omitted)); Rassier, 996 F.3d at 836 ("When a section 1983 claim accrues is a question of federal law." (cleaned up and citation omitted)); Abdel v. U.S. Bancorp, 457 F.3d 877, 880 (8th Cir. 2006) ("The question of claim accrual, however, is governed by federal common law."). Whether Plaintiffs' federal claims currently are ripe and when they accrued depend on the elements of the constitutional claims.

Plaintiffs' first federal claim is under the Fifth and Fourteenth Amendments for a taking. Doc. 1 at 8–11; Doc. 16-1 at 10–13. "The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, provides: '[N]or shall private property be taken for public use, without just compensation.'" Cedar Point Nursery v. Hassid, 594 U.S. 139, 147 (2021) (alteration in original) (quoting U.S. Const. amend. V). "The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 194 (1985), overruled on other grounds by Knick v. Twp. of Scott, Pa., 588 U.S. 180 (2019). "The Fifth Amendment right to full compensation arises at the time of the taking[.]" Knick, 588 U.S. at 190.

The Supreme Court in Knick explained that the appropriate remedy for a government taking is compensation. Id. at 198–202. Equitable relief is unavailable because "[a]s long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking." Id. at 201. The Court held that "[a]s long as just compensation remedies are available—as they have been for nearly 150 years—injunctive relief will be foreclosed." Id. at 205. Thus, Plaintiffs' takings claim does not provide a basis for injunctive relief.

Plaintiffs in later briefing also base their request for a preliminary injunction on their fifth count for violations of Due Process under the Fourteenth Amendment. Doc. 1 at 15–16; Doc. 16-1 at 16–17; see Doc. 23 at 9–17. Plaintiffs' Due Process argument for a preliminary injunction asserts that the District overstepped its authority in enacting Resolution 2024-5 in particular and threatening Plaintiffs with enforcement action. Id. at 10–17. "A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." Reed v. Goertz, 598 U.S. 230, 236 (2023); Stauch v.

13

City of Columbia Heights, 212 F.3d 425, 430 (8th Cir. 2000) ("An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing that is appropriate to the nature of the case."). "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." Zinermon v. Burch, 494 U.S. 113, 125 (1990) (cleaned up and citation omitted).

"Property interests are not created by the Constitution but rather stem from an independent source such as state law." Stauch, 212 F.3d at 429 (stating "municipal ordinance can be a form of state law creating a protected property interest"). "A property interest arises when state law creates expectations that are justifiable," but not "where the statutory claim to a benefit is too ephemeral and insubstantial." Austell v. Sprenger, 690 F.3d 929, 935 (8th Cir. 2012) (cleaned up and citations omitted). The State of South Dakota has not established an unfettered right to avoid public sewer or water systems though private wells and septic systems.

South Dakota law authorizes sanitary districts in SDCL chapter 34A-5. A sanitary district is a governmental subdivision of South Dakota, SDCL § 34A-5-14, and is governed by an elected board of trustees, id. § 34A-5-14.1, which may "pass and implement all necessary ordinances, resolutions, orders, and regulations for the proper management and conduct of the business of the sanitary district," id. § 34A-5-29. The statutes governing sanitary districts generally concern sewers and not drinking water. For instance, SDCL § 34A-5-35 states:

> The board of trustees may require by ordinance or resolution that all dwellings or structures within the district, or within a defined area, shall be connected with the sewers of the district. They may also require minimum sanitary facilities, immediately or within a specified period after the completion of sewers to which a connection may reasonably be made, under such regulations as are established by the resolution or ordinance. When the district finds and determines that such action is necessary for the maintenance of public health and sanitary conditions in the district it may cause any such connection to be made, and assess the cost thereof

14

> upon the land where the dwelling or structure is situated, or make an agreement with the owner or occupant to accept payment therefor in cash or in installments payable with other sewer rates and charges over such period as may be agreed. The district may impose and collect charges for the availability of sewer service to any properties so directed to be connected, whether or not such connection is made. The board of trustees shall have exclusive jurisdiction to establish by ordinance or resolution standards for construction and inspection of private sewer systems within its boundaries, in conformity with state county laws and regulations.

Id. § 34A-5-35. SDCL § 34A-5-41 in turn allows a sanitary district to "acquire and operate a water system" and grants the district and board of trustees "all powers granted in this chapter with reference to sewer facilities" for operation of water systems.

South Dakota agencies have promulgated administrative rules, and Plaintiffs cite to ARSD 74:53:01:07 as restricting the authority of a sanitary district to require connection to a sewer collection system only if within 400 feet of the home. That rule states:

> No person may construct, install, or operate an on-site wastewater system where a public wastewater system is available. A public wastewater system is considered available to premises under the following circumstances:
> (1)    The structure or wastewater system is located within the jurisdictional boundaries of a municipality or sanitary district;
> (2)    The sewer collection system of the public entity exists within 400 feet of the home, trailer court, commercial establishment, business, park, or institution; and
> (3)    The municipality or sanitary district requests to provide service to the premises.

ARSD 74:53:01:07. Plaintiffs also rely on a statute from a different chapter of South Dakota law that they read as further restricting the ability of the District to require connection to its sewer system. Doc. 23 at 31–34. That statute appears to apply only to certain municipalities and reads:

> Each building in which plumbing fixtures are installed shall connect to a public water sewer system if available. A public sewer system is available to a premise used for human occupancy if the property line of the premise is within two hundred feet of the system. A municipality may purchase, lease with purchase option, lease, or otherwise acquire from the owners, or condemn pursuant to subdivision 9-12-1(2), any preexisting private sewers located within the municipality. The provisions of this section do not apply to municipalities of the first class. Nothing in this section requires any municipality to provide any municipality service outside of its municipal boundaries.

15

SDCL § 9-48-53.

Here, Plaintiffs claim that the District violated their procedural due process rights by passing Resolution 2024-5, which, as Plaintiffs see it, repealed the District's Ordinances 7 and 8 requiring connections if mains are within 400 feet of a property line and violated ARSD 74:53:01:07 requiring connection to a public entity's sewer collection system only where the residence is within 400 feet of a mainline. Doc. 23 at 10–11. Plaintiffs do not contend that the Board failed to follow the state procedures in place for passing and implementing a resolution, but rather that Resolution 2024-5 violates the "equal dignity" rule by implicitly repealing the District's Ordinance 7 and Ordinance 8 and ARSD 74:53:01:07. Id. at 11. Plaintiffs point to the hierarchy that the District's ordinances must comply with state law, and the District's resolutions must comply with its ordinances; thus, a resolution cannot repeal ordinances and certainly cannot contravene state law. See id. at 11, 13. Plaintiffs also contend that the District does not have authority to impose criminal penalties and that Resolution 2024-5's purported imposition of criminal penalties is ultra vires. Id. at 20–28.

Resolution 2024-5 is problematic and can be read as inconsistent with Ordinances 7 and 8 and ARSD 74:53:01:07 by not restricting mandatory connection to a main only when the main is within 400 feet of the property line. See Hr'g Exs. 7, 8, 9, 10. However, since the passage of Resolution 2024-5, the District has passed Resolution 2026-1 giving the Board authority to grant a private use variance for new systems and for existing systems after a satisfactory inspection. Hr'g Ex. 11. South Dakota law provides the Board with broad authority to adopt, and in turn to modify, resolutions. SDCL § 34A-5-29 ("The board of trustees may pass and implement all necessary ordinances, resolutions, orders, and regulations for the proper management and conduct of the business of the sanitary district."); Brant Lake Sanitary Dist. v. Thornberry, 886 N.W.2d

16

358, 360 (S.D. 2016) ("[The district] *may* require the [plaintiffs] to connect to sewer facilities if it enacts ordinances or resolutions that require as much." (citing SDCL § 34A-5-35 ("The board of trustees may require by ordinance or resolution that all dwellings or structures within the district, or within a defined area, shall be connected with the sewers of the district."))). Resolution 2026-1 allows for private use variances for properties beyond 400 feet of the sewer and water mains and for existing users of wells and septic systems. Hr'g Ex. 11. Ordinance 7 and Ordinance 8 likewise still exist and require connection to the sewer and water mains if they are within 400 feet of the property line. Thus, Plaintiffs presently have a non-judicial remedy of applying for a private-use variance for an existing structure as detailed in Resolution 2026-1. Further, the District has stipulated and this Court will grant a limited injunction precluding the District from seeking to enforce criminal penalties against Plaintiffs for installing and using a private well and septic system. The District also recently enacted Resolution 2026-2, under which a sewer force main would run to a point adjacent to the tract on which Utech's new home sits and to a point far closer to his home. Hr'g Ex. 12. And if the District accepts the extension built by CC Development, the water main comes closer to Utech's new home also. Thus, Plaintiffs' concerns about Resolution 2024-5 imposing criminal penalties and being ultra vires dissipate with the stipulation and subsequent resolutions and thus do not warrant the relief they seek.

Simply put, Plaintiffs have not shown a likelihood of success on the merits supporting injunctive relief. Plaintiffs' takings claims are ones for money damages that accrue only upon the actual digging of pipes to connect Utech's residence to the District's water and sewer mains. The District's commitment not to pursue criminal sanctions and new resolutions allowing for possible variances and closer connection points largely undermine Plaintiffs' argument for success on the merits of their procedural due process claim. This Court also has concerns about ripeness and

17

accrual of the claims.  Likelihood of success on the merits is the primary factor that a party seeking a preliminary injunction must show, and Plaintiffs have not met that burden beyond justifying a limited preliminary injunction to which the District has stipulated.

### C.  Threat of Irreparable Harm

"To show irreparable harm, 'a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief.'"  Morehouse Enters., LLC v. ATF, 78 F.4th 1011, 1017 (8th Cir. 2023) (quoting Dakotans for Health v. Noem, 52 F.4th 381, 392 (8th Cir. 2022)).  Plaintiffs claim that connection of Utech's new home to appropriate District sewer and water mains would cost over $500,000.  See Hr'g Exs. 19, 20.  An irreparable harm, however, is one that cannot be compensated through money.  Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009) ("Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages.").  The exorbitant cost of connecting the new residence to District mains in the way Plaintiffs foresee does not transform the case into one justifying a preliminary injunction.  Knick, 588 U.S. at 201 ("[B]ecause the federal and nearly all state governments provide just compensation remedies to property owners who have suffered a taking, equitable relief is generally unavailable.  As long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking.").  This is insufficient to show irreparable harm.  Gen. Motors Corp., 563 F.3d at 319.

Plaintiffs allege that they face irreparable harm from the District's demand in four ways: 1) it will prevent Utech from using his residence, 2) it will expose Plaintiffs to criminal prosecution, 3) it will force Plaintiffs to immediately begin digging trenches for pipe, and 4) it will cause Plaintiffs reputational harm.  Doc. 4 at 8.  However, the District has stipulated to injunctive

relief to prevent any risk of criminal prosecution, has passed recent resolutions under which Plaintiffs may seek a variance for the home and which may bring the sewer force main closer to Utech's new home, and has undertaken no enforcement actions at all over the approximately eight months during which this case has been pending. Utech continues to use his new home. If the District were to dig trenches at Plaintiffs' cost, the remedy is an award of money damages or declaratory judgment later that Plaintiffs need not pay the cost. Plaintiffs do not face any legitimate reputational harm. None of these alleged harms constitute an irreparable harm justifying a preliminary injunction under the circumstances. See Gen. Motors Corp., 563 F.3d at 319.

"Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." Grasso Enters., LLC v. Express Scripts, Inc., 809 F.3d 1033, 1040 (8th Cir. 2016) (quoting Watkins Inc., 346 F.3d at 844). Plaintiffs have not shown "that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." Morehouse Enters., LLC, 78 F.4th at 1017 (citation omitted). Indeed, the preliminary injunction hearing occurred 7 ½ months after the motion for preliminary injunction was filed. All while the status quo has remained the same but for the District's adoption of resolutions seemingly favorable to Plaintiffs in June 2026.

## D. The Balance of Equities and Public Interest

The balance of equities and public interest arguably favor Plaintiffs to the extent this case is limited to merely the water and septic system for a private residence used part-time during the year, on the far northern edge of the District for which cost of connecting to the District's current mains could be exorbitant. But the balance of equities and public interest favor the District to the extent that this lawsuit might be challenging the District's ability to extend requirements for use of its sewer and water systems over future development in the District. The District and the public

19

has a strong interest in its mission to provide public water distribution and wastewater collection and treatment facilities within the District, and to expand that system in a way where it can recoup its costs of new infrastructure. The District also has an interest in enforcing its ordinances and resolutions and deterring Plaintiffs and others from developing private wells and septic systems designed to become competing systems within the District. Therefore, the final two Dataphase factors do not weigh in favor of a preliminary injunction broader than what preserves the status quo.

## IV. Conclusion

For the reasons explained above, it is

ORDERED that Plaintiffs' Motion to Amend Complaint and Join Additional Party, Doc. 16, is granted. Plaintiffs have 14 days within which to file the Amended Complaint, after which the District has 21 days to answer or otherwise respond under Federal Rule of Civil Procedure 12. It is further

ORDERED that Plaintiffs' Motion for Preliminary Injunction, Doc. 3, is granted only to the extent that the District is enjoined from undertaking any action to enforce Resolution 2024-5 or other Ordinance through criminal action against Plaintiffs. It is further

ORDERED that if the District seeks to force connection of Utech's private residence prior to allowing Utech to seek a variance under Resolution 2026-1, Plaintiffs may renew a motion for preliminary injunction. It is finally

ORDERED that Plaintiffs' Motion for Preliminary Injunction, Doc. 3, is otherwise denied.

DATED this __2nd__ day of July, 2026.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE

21